AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

**E-FILED**
Tuesday, 10 March, 2020  02:28:35 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No.    20-mj-6414 |
| | ) |
| | ) |
| | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please See Attachment A.

located in the _____ Central _____ District of _____ Illinois _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 13, 720 ILCS 5/26-4 Unauthorized Video [Photograph] Recording | Unauthorized Video [Photograph] Recording (Assimilative Crimes Act); It is unlawful for any person to knowingly make a video record (photograph) of another without that person's consent in a locker room or changing room. |

The application is based on these facts:

Please See Attached Affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ R. Bucher

_____
*Applicant's  signature*

Detective Robert Bucher

_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ *(specify reliable electronic means)*.

Date:   3/10/2020
_____

City and state:   Peoria, IL
_____

Jonathan E. Hawley, U.S. Magistrate Judge

_____
*Judge's signature*

_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

IN THE MATTER OF THE SEARCH OF
MR. LEONARD CALVIN SIMPSON II
PERSON AND VEHICLE, FURTHER
DESCRIBED IN ATTACHMENT A, AND
CELL PHONES CURRENTLY LOCATED
ON MR. LEONARD CALVIN SIMPSON II
PERSON AND VEHICLE

20-mj-6414

Case No. _____

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Robert Bucher, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is likely currently with Mr. Leonard Calvin Simpson II on his person or in his vehicle, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Detective with the US Army Garrison - Rock Island (USAG-RIA) Directorate of Emergency Services (DES) Police Department (PD), and have been since August of 2009.  I have been a Police Officer, investigator, and Security Specialist for over 20 years, and have served as a Detective for approximately 12 years.  I hold Masters Degree in Criminal Justice and Bachelors Degree in Justice Science.  I have since received additional advanced

training in conducting complex long-term criminal investigations.  As a Detective with the DES, I have conducted multiple computer and cell phone forensic examinations and numerous investigations into violations of federal criminal law, including misuse of government information technology systems.  I hold the following advanced electronic forensics certifications EnCase Level II and CelleBrite Certified Logical Operator.

3.     RIA is a federally-owned arsenal operated by the United States Army with exclusive federal jurisdiction with respect to the prosecution of criminal matters.  As a Department of Army Civilian Detective, I have authority to investigate crimes, conduct interviews/interrogations, and collect evidence in cases in which the U.S. Government may be a party of interest, and perform other duties imposed upon me by Army Regulations or law.  My authority to conduct criminal investigations, conduct interviews/interrogations, collect evidence, detain, apprehend, and arrest comes from the United States Constitution, 5 U.S.C. § 303(b), Title 10 Uniform Code of Military Justice Article 136(b)(4), Department of Defense Instructions, Army Regulations, and through delegation of authority from the RIA Mission Commander.

4.     I submit, that there is probable cause to believe, Mr. Leonard Calvin Simpson II, hereinafter "Mr. Simpson," has committed the offenses of Unauthorized Video or Photograph Recording via the Assimilative Crimes Act in violation of 18 USC 13 - 720 ILCS 5/26-4 in that Mr. Simpson contrary to law violated the privacy of another with the use of a recording device in a locker room shower.  I also submit that there is probable cause to believe that evidence of those crimes may be located on Mr. Simpson's person and in his vehicle to include within his cellphone and bags so located.  This affidavit is intended to show only that there is sufficient

2

probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.     The property to be searched is:  all cell phones in the possession of Mr. Leonard Simpson.  The cell phones, hereinafter the "Device" are likely currently located on Mr. Simpson's person and in his vehicle.   The search includes Mr. Simpson's person including his pockets, carried bags, and/or backpacks.  The search includes Mr. Simpson's vehicle a gray 2017 Ford Fusion sedan, 4 doors, Illinois Plate Number 8810552.

6.     The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7.     On 10/17/2019, at approximately 1212, Mr. Alex Sheppard, Department Army Civilian, filed a complaint with RIA PD concerning an incident at the RIA Fitness Center involving a person he knows as Leonard.  Mr. Sheppard alleged Leonard photographed him naked in the RIA Fitness Center shower.

8.     On 10/18/2019, at approximately 0906, DET Justin Heald and I interviewed Mr. Alex Sheppard who made the following significant statements.  Mr. Sheppard stated he began having contact with someone he knows as Leonard or as Leonard Calvin in the RIA Fitness Center around July 2018.  Mr. Sheppard did not identify Leonard or Leonard Calvin as Mr. Leonard C Simpson.  Mr. Sheppard stated several of these contacts led to incidents with Leonard.  Mr. Sheppard stated the incidents occurred in the RIA Fitness Shower.  Mr. Sheppard

3

stated he normally showers between 0540, and 0550. Mr. Sheppard stated at times, Leonard

would be in the shower, or he would come in to shower. Mr. Sheppard stated around late 2018,

to early 2019, Leonard approached him after Mr. Sheppard showered. Mr. Sheppard stated

Leonard approached him asking how much do you weigh. Mr. Sheppard stated Leonard told

him he would weigh less without the towel around his waist. On 10/8/2019, around 0540, to

0550, Mr. Sheppard stated he believes Leonard utilized his cell phone to photograph him naked

in the RIA Shower without consent. Mr. Sheppard stated he entered the shower, and Leonard

was already in there. While in the shower, Mr. Sheppard stated he saw Leonard attempting to

conceal a cell phone utilizing a wash cloth. Mr. Sheppard stated he was washing soap out of his

hair. Mr. Sheppard stated, while his head was under water, he saw Leonard take a step to the

North and expose his cell phone with both hands around the device. Mr. Sheppard stated

Leonard was holding the cell phone with both hands with his thumbs on the screen. Mr.

Sheppard stated Leonard would only expose his cell phone while his head was underwater. As a

result of Leonards' actions, Mr. Sheppard stated he quickly left the shower. After showering,

Mr. Sheppard stated Leonard approached him asking about his weight. Later, Mr. Sheppard

stated he blocked Leonard from FaceBook. In the past, Mr. Sheppard stated Leonard attempted

to contact him via FaceBook. Mr. Sheppard stated he went on Leonard's FaceBook page in

order to block him.

9.       After the interview, DET Heald went to Police Sergeant Jamie Whipple's desk,

and he looked up Mr. Leonard C Simpson's FaceBook account. Mr. Simpson's FaceBook

account is open to public viewing.  On Mr. Leonard C Simpson's FaceBook page, there is a

photograph of him holding a sign with Hoda from Good Morning America. DET Heald

telephoned Mr. Sheppard's work phone, and asked him if he could describe any pictures from

Leonard's FaceBook page.  Mr. Sheppard described two pictures one of which is Leonard

holding a sign with Hoda from Good Morning America, and the other is Leonard wearing a

white pinstripe suit.  DET Heald did not describe the pictures to Mr. Sheppard.

For additional information, reference the attached photographs pulled from Mr. Leonard C.

Simpson's FaceBook page, below:

(3) Leonard Calvin

Page 1 of 1





10.  Mr. Leonard C Simpson's FaceBook page has not significantly changed since the start of this investigation including the shown account name.  Mr. Leonard C Simpson's FaceBook page is named as "Leonard Calvin (Leonard Simpson)".  For additional information, reference Mr. Leonard C Simpson's FaceBook page, below.



8

11.     On 10/17/2019, at approximately 1532, I met with Mrs. Debbie Powell, Morale, Welfare, and Recreation, RIA Fitness Center.  Mrs. Powell provided me with Fitness Pass Visit Logs and Fitness Generic Visit History Report Records.  An analysis of Fitness Pass Visit Logs only shows two individuals accessing the fitness center named Leonard on 10/8/2019.  RIA Fitness Center requires each individual to scan an Identification Card at the front desk.  The Fitness Pass Visit Logs show Mr. Leonard C Simpson, with Pass Member 8311 entering the RIA Fitness Center at 0525, on 10/8/2019.  The Fitness Pass Visit Logs show Mr. Alex R. Sheppard entering the RIA Fitness Center at 0504, on 10/8/2019.  The other individual named "Leonard" who accessed the Fitness Center on 10/8/2019 is Mr. Leonard Bowman, who did not enter the fitness center until 0836.  Because Mr. Leonard Bowman did not enter the fitness center until after Sheppard departed, I determined that Mr. Leonard Bowman is not a suspect.  Note, none of the other individuals who entered the fitness center prior to 0550, on 10/8/2019, had names similar to Leonard, Leonard Calvin, Simon Leonard, or Leonard Simon.  The Fitness Generic Visit History Report Records provided Mr. Leonard C Simpson's birthday and gender.  The RIA Fitness Center is open Monday thru Friday from 0430, to 1930, and weekends from 0700, to 1500.  For additional information, reference the Fitness Pass Visit Logs attached, below.

Fitness Clerk Menu
**PASS VISIT LOG**

| Visit Date | In Time | Out Time | Pass Member | Type | Pass# | Purp | Cat | Count | Hours | Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/08/2019 | 4:30A | N'Appl | Richard F Schwartz | 02 | 21416 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 4:30A | N'Appl | James L Jochum | 02 | 7930 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 4:32A | N'Appl | Robert T Valentine | 05 | 20187 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 4:33A | N'Appl | Gene P Davis | 01 | 18755 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 4:33A | N'Appl | Mark E Hayes | 02 | 1111 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 4:37A | N'Appl | James Osterhage | 09 | 29247 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 4:41A | N'Appl | Curtis L Bryant | 09 | 28716 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 4:43A | N'Appl | LaRhonda L Dickerson | 01 | 28220 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 4:45A | N'Appl | Daniel R Gillen | 01 | 18948 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 4:46A | N'Appl | Brad T Jackson | 01 | 15134 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 4:47A | N'Appl | Travis M. Bettinger | 09 | 29541 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 4:48A | N'Appl | Eric A. Tuel | 09 | 27289 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 4:49A | N'Appl | Gina L. Tuel | 09A | 28165 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 4:54A | N'Appl | Daniel E Brown | 01 | 9294 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 4:56A | N'Appl | Isis E Blythe | 09 | 29781 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 4:56A | N'Appl | Phillip A Dement | 05 | 23912 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 4:57A | N'Appl | Jeremy D Brown | 09 | 29565 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 4:58A | N'Appl | Toni Kenny | 09A | 28969 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:02A | N'Appl | Linda K Dolhard | 01 | 13477 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:02A | N'Appl | Jeffrey M. Moses | 05 | 27759 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:02A | N'Appl | Samuel R Nietzel | 01 | 25146 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:04A | N'Appl | Emily L Sheppard | 01 | 27907 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:04A | N'Appl | Alex R. Sheppard | 01 | 27884 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:05A | N'Appl | Jason Moncuse | 09 | 29525 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:08A | N'Appl | Ricky Myers | 09 | 28379 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:10A | N'Appl | Lakeithia M. Thomas | 09 | 29380 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:12A | N'Appl | Virginia Chantis-Stevens | 01 | 29433 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:16A | N'Appl | Benjamin J, Kuster | 09 | 28910 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:20A | N'Appl | Tara A Hill | 01 | 29605 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:23A | N'Appl | Vicki L. Payton | 01 | 1523 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:25A | N'Appl | Leonard C. Simpson | 07 | 8311 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:29A | N'Appl | Joe M. Ulloth | 09 | 28229 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:30A | N'Appl | Lynda R Armar | 09 | 29679 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:31A | N'Appl | Robert D Petrie | 05 | 28095 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:32A | N'Appl | April D. Lamon | 09 | 27866 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:36A | N'Appl | Mathhew R. Conger | 01 | 27536 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:37A | N'Appl | Michael E. Havey | 09 | 29205 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:45A | N'Appl | Paul J. Armour | 05 | 27133 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:48A | N'Appl | Matthew D. Sears | 01 | 22376 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:55A | N'Appl | Brigham S Jr. Hall | 09 | 29596 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:57A | N'Appl | Andraw Boisen | 01 | 23766 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:58A | N'Appl | Tony J. Woodruff | 09 | 29138 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 5:59A | N'Appl | Ronald Deal | 09 | 28536 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:00A | N'Appl | Adam M. Price | 01 | 16876 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:04A | N'Appl | Kyle A Krebs | 01 | 26206 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:04A | N'Appl | Fernando j Avellan | 09 | 29683 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:09A | N'Appl | Terry L. Ford | 01A | 29401 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:09A | N'Appl | Michael J Ziegler | 09 | 29523 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:10A | N'Appl | Demond Gardner | 09 | 27024 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:12A | N'Appl | Dwayne Cook | 09 | 26273 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:16A | N'Appl | Michael R Hoogerwerf | 05 | 26330 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:19A | N'Appl | Jordan P Lewis | 09 | 29788 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:20A | N'Appl | Thomas G Vetter | 02 | 5373 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:27A | N'Appl | Joan Waggoner | 02A | 9673 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:29A | N'Appl | Todd Sims | 09 | 29528 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:34A | N'Appl | Roger A Waggoner | 02 | 9672 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:35A | N'Appl | Jim M. Cobb | 02 | 17854 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:43A | N'Appl | Robert J West | 09 | 29582 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:48A | N'Appl | Karl Butler Jr | 09 | 29784 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:49A | N'Appl | Cathryn A St. Dennis | 01 | 21276 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 6:54A | N'Appl | Mike S. Richard | 02 | 2408 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 7:00A | N'Appl | Cameron P Goss | 09 | 29812 | | | 1.00 | 0.00 | 0.00 |
| 10/08/2019 | 7:08A | N'Appl | Katharina Clark | 05 | 29744 | | | 1.00 | 0.00 | 0.00 |

12. On 10/30/2019, I interviewed Mr. Samuel Erickson who is 18 years of age.  During the interview, Mr. Erickson made the following significant statements.  Mr. Erickson stated on or about the evening of 9/4/2019, an incident occurred between him and someone he knows as Leonard, and Mr. Erickson believes that Leonard's full name is Simon Leonard or something like that.  Mr. Erickson did not describe Leonard by Mr. Leonard C Simpson.  Mr. Erickson stated the incident with Leonard occurred in the RIA Fitness Center.  Mr. Erickson stated he and Leonard were in the sauna together.  While in the sauna, Mr. Erickson stated Leonard began asking him weird questions.  Mr. Erickson stated Leonard asked for his cell phone number.  Mr. Erickson stated Leonard asked him if he attended the Young Men's Christian Association (YMCA) in Moline.  Mr. Erickson stated Leonard told him to call if he wanted to visit the YMCA.  Mr. Erickson stated Leonard told him he would pick him up, and they would get food after visiting the YMCA.  Mr. Erickson stated Leonard repeatedly asked him if he would be at the RIA Fitness Center the next day and the following week.  Mr. Erickson stated, while at the fitness center, Leonard followed Mr. Erickson in a weird manner.  Mr. Erickson stated Leonard followed him staying between three to four feet away.  Mr. Erickson stated Leonard followed him into the shower.  Mr. Erickson stated Leonard peeked his head in the door and took a few steps into the shower.  Mr. Erickson stated Leonard asked him do you want to use my shampoo.  Mr. Erickson stated he was naked at the time.  Mr. Erickson stated Leonard is balding with a short haircut.  According to Mr. Erickson, the entire incident with Leonard lasted around five to ten minutes.  After the incident at the RIA Fitness Center, Mr. Erickson stated Leonard telephoned him approximately two to three times.  Mr. Erickson stated when Leonard called him, the caller ID for the phone read Leonard Simon, Simon Leonard, or something like that.

11

13.  Subsequently, I had Defense Enrollment Eligibility Reporting System (DEERS) and
Accurint records run on Leonard C Simpson based on date of birth information received from
fitness center records.  DEERS and Accurint records link Leonard C Simpson to Leonard Calvin
Simpson II.

14.  In my experience and training destroying electronic data is difficult at best on
devices.  Just because an image is deleted on a device does not mean data does not still exist, and
it may still be recovered with forensic examination tools.

15.  In my experience, individuals keep cell phones on their person and in their vehicle.
The Device are likely currently located on Mr. Leonard Simpson person and in his vehicle.

## TECHNICAL TERMS

16.    Based on my training and experience, I use the following technical terms to
convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular
telephone) is a handheld wireless device used for voice and data
communication through radio signals.  These telephones send signals through
networks of transmitter/receivers, enabling communication with other wireless
telephones or traditional "land line" telephones.  A wireless telephone usually
contains a "call log," which records the telephone number, date, and time of
calls made to and from the phone.  In addition to enabling voice
communications, wireless telephones offer a broad range of capabilities.
These capabilities include: storing names and phone numbers in electronic

"address books;" sending, receiving, and storing text messages and e-mail;

taking, sending, receiving, and storing still photographs and moving video;

storing and playing back audio files; storing dates, appointments, and other

information on personal calendars; and accessing and downloading

information from the Internet.  Wireless telephones may also include global

positioning system ("GPS") technology for determining the location of the

device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital

picture files, rather than by using photographic film.  Digital cameras use a

variety of fixed and removable storage media to store their recorded images.

Images can usually be retrieved by connecting the camera to a computer or by

connecting the removable storage medium to a separate reader.  Removable

storage media include various types of flash memory cards or miniature hard

drives.  Most digital cameras also include a screen for viewing the stored

images.  This storage media can contain any digital data, including data

unrelated to photographs or videos.

c.  GPS:  A GPS navigation device uses the Global Positioning System to display

its current location.  It often contains records the locations where it has been.

Some GPS navigation devices can give a user driving or walking directions to

another location.  These devices can contain records of the addresses or

locations involved in such navigation. The Global Positioning System

(generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting

13

the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

14

e.  Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "Wi-Fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

f.  Pager:  A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network.  Some pagers enable the user to send, as well as receive, text messages.

g.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

15

h.  Internet: The Internet is a global network of computers and other electronic
devices that communicate with each other.  Due to the structure of the
Internet, connections between devices on the Internet often cross state and
international borders, even when the devices communicating with each other
are in the same state.

17.  Based on my training, experience, and research, I know that the Device likely has
capabilities that allow it to serve as wireless telephone, digital camera, portable media player,
GPS navigation device, and PDA.  In my training and experience, examining data stored on
devices of this type can uncover, among other things, evidence that reveals or suggests who
possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18.  Based on my knowledge, training, and experience, I know that electronic devices
can store information for long periods of time.  Similarly, things that have been viewed via the
Internet are typically stored for some period of time on the device.  This information can
sometimes be recovered with forensics tools.

19.  *Forensic evidence.*  As further described in Attachment B, this application seeks
permission to locate not only electronically stored information that might serve as direct evidence
of the crimes described on the warrant, but also forensic evidence that establishes how the Device
was used, the purpose of its use, who used it, and when.  There is probable cause to believe that
this forensic electronic evidence might be on the Device because:

16

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a premises.

b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

17

20.    *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

21. *Manner of execution.*  In the daytime 6:00 a.m. to 10:00 p.m.

## CONCLUSION

22.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,
/s/ R. Bucher

Robert Bucher
Detective
US Army Garrison – Rock Island Arsenal

Subscribed and sworn to before me
on March   , 2020
Jonathan E. Hawley, U.S. Magistrate Judge

UNITED STATES MAGISTRATE JUDGE

18

## ATTACHMENT A

1.      The property to be searched is:  all cell phones in the possession of Mr. Leonard Simpson, hereinafter the "Device" (cell phone).  The Device is likely currently located on Mr. Simpson's person and in his vehicle.

2.      The search includes Mr. Simpson's person including his pockets, carried bags, and/or backpacks.

3.      The search includes Mr. Simpson's vehicle which is a gray 2017 Ford Fusion sedan, 4 doors, Illinois Plate Number 8810552.

4.      The Device is likely currently located on Mr. Simpson's person and in his vehicle. In my experience, individuals keep cell phones on their person and in their vehicle.

5.      For additional information, reference the attached photograph, below.



This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

2

## ATTACHMENT B

1.      All records on the Devices described in Attachment A that relate to violations of

18 USC 13 - 720 ILCS 5/26-4 and involve Mr. Leonard Simpson  since 10/8/2019, including:

      a.  Evidence of user attribution showing who used or owned the Device at the time

          the things described in this warrant were created, edited, or deleted, such as logs,

          phonebooks, saved usernames and passwords, documents, images, pictures,

          videos, and browsing history;

      c.  Any images, pictures, photographs, and videos of Mr. Alex Sheppard and the

          shower area of the Rock Island Arsenal Fitness Center.

As used above, the terms "records" and "information" include all of the foregoing items

of evidence in whatever form and by whatever means they may have been created or stored,

including any form of attached electronic storage (such as flash memory or other media that can

store data) and any photographic form.